Morris, Guardian, *et al. v.* Goodwin *et al.*

below to sustain the demurrer, and for further proceedings in accordance with this decision.

Filed May 27, 1891.

No. 41.

## MORRIS, GUARDIAN, ET AL. *v.* GOODWIN ET AL.·

GUARDIAN AND WARD.—*Authority to Sell Ward's Real Estate.—Notice of Guardian's Power.*—The power of a guardian to sell his ward's real estate depends upon express authority of the court under whose jurisdiction he acts, granted in strict conformity to the statute authorizing such sales; and all who deal with him are bound to know the circumscribed character of his powers.

VENDOR AND PURCHASER.—*Parol Contract.—Money Paid On.—Recovery.— Enforcement of Contract.*—If a purchaser of real estate by a parol contract pay money on the contract for it, he may recover back the money advanced upon the purchase, if the vendor either declines to perform the contract or is unable to do so. Such a contract, however, can not be enforced.

SAME.—*Recovery of Money Paid Under Parol Contract.— Vendor Able and Willing to Carry Out Contract.*—Under a parol contract for the sale of real estate, if the vendor is able and willing to consummate the sale, the vendee can not rescind and recover the money he has advanced.

SAME.—*Doubtful, or Irregular, Title.*—A purchaser of real estate is not bound to carry out an executory contract of sale if there is such a defect, or irregularity, in the title, as justly excites his suspicion, or which may involve him in litigation, although it might be pronounced good by legal advisers.

SAME.—*Contract with Guardian to Purchase Ward's Estate.— Irregularity of Order of Sale.—Doubtful Title.—Recovery of Money Paid.*—A guardian entered into a written contract of purchase for the sale of his ward's real estate, upon the express conditions that a third person having an interest in it would join in the sale; that the ward's wife would convey her interest in it, and that he could obtain authority from the proper court enabling him to make a sale that would give to the purchaser a "good and perfect title." Four hundred dollars were paid down by the purchaser as a forfeit. The guardian filed a petition reciting the necessity for the sale, the contract he had entered into, and asked authority to carry out its provisions and execute a deed to the purchaser. The

court found the interest of the ward's estate would be promoted by acceptance of the proposition made, appointed appraisers, who reported *instanter* (whereupon the guardian at once filed the necessary bond), and directed the guardian to publish notice of the sale for ten days in a designated daily paper; and at the expiration of the time, if he did not receive a higher bid, he was directed to convey the land at once by deed to the purchaser named in the written contract. No terms were fixed for the payment of the purchase money, but the terms of the written contract were for cash. Before the expiration of the ten-day limit, the purchaser under the contract paid five hundred dollars more, and the parties, by written agreement endorsed on the contract, extended the time of performance four days beyond the limit named in the contract, upon the condition that if the purchaser should, at the end of that time, decide that the title to the real estate was defective, the money was to be returned; but if he elected not to consummate the contract, it was to be retained by the guardian. The purchaser declined to consummate the sale, on the ground, as he claimed, that the title was defective.

*Held,* that the title was so doubtful that the purchaser was entitled to recover back the money paid; but if it had not been doubtful, the contract was valid and enforceable.

From the Vanderburgh Circuit Court.

*S. B. Vance, J. M. Shackelford, A. Gilchrist* and *C. A. DeBruler,* for appellants.

*J. S. Buchanan, C. Buchanan* and *P. Maier,* for appellees.

CRUMPACKER, J.—Frederick W. Brinkmeyer was the owner of certain real estate in Vanderburgh county, upon which there were buildings, machinery, tools and implements used for the manufacture of brick. He was in partnership with George Lant in the manufacture of brick on said premises. The *firm,* as such, had no interest in the real estate or fixtures, but owned the tools, implements, and other personal property, which were of the value of about two thousand dollars.

Brinkmeyer became incompetent to manage his affairs on account of unsoundness of mind, and was so adjudged by the Vanderburgh Circuit Court in a proper proceeding, and Cave J. Morris was appointed guardian for his estate. The estate

of said Ward and the business of said firm were involved in indebtedness to a large amount, and it became necessary to sell the real estate and machinery used in the manufacture of brick by said firm to discharge debts and prevent sacrifice, and on the 7th day of June, 1887, the guardian entered into a written contract with John J. and George R. Goodwin for the sale of the entire property to them, including that which belonged to the firm, for $17,000, to be paid in cash, on condition that Lant would join in the sale, and that Brinkmeyer's wife would convey her interest in the real estate to such purchasers, and upon the further condition that the guardian should obtain authority from the Vanderburgh Circuit Court enabling him to make such sale. The contract provided that the sale should be consummated within two weeks from the date thereof, and that the vendors should convey the property by "good and perfect title." Four hundred dollars were paid upon the purchase at the date of the execution of the contract, which sum was to be forfeited to the vendors if the purchasers should fail to perform the contract, but it was to be returned to them if the vendors for any reason failed to perform.

At the same time the purchasers entered into a written contract with Lant, by the terms of which he agreed to sell all of his interest in the firm business and property if the sale by the guardian should be consummated. He was to have $1,000 for his interest, and received one-half of the advanced payment.

After the execution of the contracts the guardian filed a petition in the Vanderburgh Circuit Court, showing the condition of his ward's estate, the necessity for the sale of the realty, and the contract he had entered into with Goodwin and Goodwin, and asked authority to carry out its provisions and execute a deed conveying the property to the purchasers. Upon this petition the court found that the interest of the ward's estate would be promoted by the acceptance of the proposition, and appointed appraisers to appraise the prop-

erty. They reported *instanter*, and fixed the value of the ward's interest in the property at $16,000, whereupon the guardian executed his additional bond in the sum of $25,000, with surety approved by the court, and the order continued, directing the guardian to publish notice of sale for ten days in a daily paper in Evansville, and at the expiration of such time, if he had not received a higher bid, he was directed to convey the property at once by deed to Goodwin and Goodwin. No terms were fixed for the payment of the purchase-money in the order, and altogether it was very unusual in its provisions.

The order was entered on the 9th day of June, and on the 21st day of that month the purchasers paid five hundred dollars more, and the parties, by written agreement endorsed upon the contract, extended the time of performance four days. This modification was as follows:

"Rec'd on the within contract five hundred dollars, and the option is extended to Saturday, the 25th day of June, at 2 o'clock P. M. If Peter Maier shall then decide that the title to said real estate is defective, said sum is to be returned, if the parties of the second part elect not to consummate the contract; otherwise, said sum is to be retained by us." Signed by the guardian and Lant.

The purchasers decided not to complete the contract at the expiration of the time, and demanded the return of the money they had advanced, which was refused.

They then filed their complaint against the guardian and Lant, in three paragraphs, for the recovery of the money advanced upon the purchase, declaring, in various forms, the making of the contract and the payments thereon, and the inability of the guardian to give a good title, and the fact that Mr. Maier had decided the guardian's authority defective and that he could not convey an indefeasible title.

The defendants appeared and filed separate answers, setting out the same defence. They alleged that the guardian had procured a sufficient order from the court authorizing him

Morris, Guardian, *et al. v.* Goodwin *et al.*

to sell and convey the property, and that he was always able, ready and willing to conclude the sale, and that Lant and Brinkmeyer's wife stood ready and willing to convey their interests in the property.  The order of court authorizing the guardian to sell the property was embodied into each answer in such a manner that it became part of it, and the averments were such that the guardian's ability to convey by good title was made dependent upon the validity of the order.

A demurrer was filed to the answer of each defendant and sustained, and the defendants severally excepted and declined to further plead, whereupon judgment was rendered against them for the amount of the advanced payments, interest and costs.

Errors are assigned which raise for decision the correctness of the ruling of the trial court upon the demurrer to the answer of each appellant.

It is insisted on behalf of appellants that the answers showed sufficient authority for the guardian to convey the property by good title, and that if he stood ready to perform the contract the purchasers could not recover the money advanced thereon even though performance of the contract could not have been enforced.  Also, that if the contract were wholly void, the appellees were chargeable with notice of its character when they advanced the money upon the purchase and did not pay it through fraud or mistake of fact, consequently they should not be allowed to recover it back.

Upon appellees' behalf it is claimed:

1. That the contract was wholly unauthorized by law and void, and that they could recover the money paid upon it as being advanced without consideration.

2. That the order of court set out in the answer disclosed such irregularities and defects as would render a deed by the guardian based upon it invalid.

It is not usual for a guardian, before obtaining permis-

sion from court, to contract for the sale of his ward's realty and receive money advanced upon the contract. The duties of a guardian are generally prescribed by law, and his authority to sell real estate depends upon express authority from the court under whose jurisdiction he acts, granted in strict conformity to the statutes regulating the guardianship upon such matters. All who deal with a guardian are bound to know the circumscribed character of his powers.

It is obvious that performance of the contract involved in the case before us could not have been specifically enforced by either party, nor damages recovered for its breach. The enforceable quality of the contract, however, is not necessarily involved in the solution of the questions presented to us by the record.

If one pays money under a parol contract for the sale of real estate, the contract can not be enforced by either party, under ordinary circumstances; yet, if the vendor either declines to perform the contract, or is unable so to do, the vendee may recover the money advanced upon the purchase. Such contracts are not void, but no power is given in the law for their enforcement. *Day* v. *Wilson,* 83 Ind. 463; *Dotson* v. *Bailey,* 76 Ind. 434; *Dantzeiser* v. *Cook,* 40 Ind. 65.

In the case at bar the property contracted to be sold was of that peculiar character that its marketability was limited to a *class* of purchasers, and the interest of the ward was complicated with the rights of his partner and encumbered with the inchoate interest of his wife.

Before incurring the expense and trouble of procuring an order for the sale of the property, and risking the hazard of a sacrifice which might result from putting it upon the market without regard to the probability of securing a satisfactory offer, the guardian sought in good faith to secure a contract for the sale in advance at what he considered a reasonable price for the property, conditioned that he would carry out the contract if he should subsequently and within the stipulated time obtain competent legal authority so to do.

This contract, necessarily, was contingent upon the procurement of authority to sell by the guardian, and upon the fact that the appraisement would not exceed the contract price, and that no better offer for the property should be received from any other source. If all of these conditions should concur so that the guardian would be in a position to perform the contract, and should stand ready so to do, we do not believe a purchaser who had advanced money upon the contract could decline to consummate it, and be enabled to recover the money advanced by him.

We are not prepared to declare as a matter of law that under such circumstances the guardian would not be allowed to respect a contract made in good faith in the interest of his ward's estate, and perform its conditions and credit upon the purchase the payments advanced.

Under a parol contract for the sale of real estate, where advance payments are made, although the contract is not enforceable, yet if the vendor is able and willing to consummate the contract, the vendee will not be permitted to rescind and recover the money advanced by him. *Day* v. *Wilson, supra.*

But where the guardian is either unwilling or unable to carry out the sale, we know of no reason why he ought not to return the purchase-money received by him. It would be highly inequitable and against the dictates of common honesty to deny a purchaser in good faith under these circumstances the right to be placed *in statu quo*, upon the forced or voluntary rescission of the contract by the guardian; indeed, it is made the policy of the law in this State by legislation to protect purchasers in good faith at judicial sales when for any reason their titles fail. Section 1084, R. S. 1881; *Stults* v. *Brown*, 112 Ind. 370; *Jones* v. *French*, 92 Ind. 138; *Walton* v. *Cox*, 67 Ind. 164; *Seller* v. *Lingerman*, 24 Ind. 264.

And the fact that the sale may be wholly void, and confer

no color of title even upon the purchaser, does not prevent him from recovering money paid thereon in good faith.

While the case before us does not fall within the letter of the law contained in the authorities cited, it comes within its equitable spirit. If there had been any collusion between the guardian and the purchasers to avoid the competition of a public sale, or if any fraud or bad faith had characterized the transaction in any·particular, quite a different principle of equity would apply.

Our conclusion is, that if the guardian was *able* and *willing* to convey the real estate to the appellees, by a "good and perfect title," within the time fixed in the contract, they were bound to accept it; and failing so to do, they would not be entitled to recover the money paid upon the purchase.

Appellants aver their ability and readiness to convey, in their answers; but they plead the order of court granting the authority to sell, and the result of the case depends upon the question whether the title they could give was such as the appellees were bound to accept.

The order of court set out in the answer recites the necessity of selling the property, and approves of the proposition to purchase by the appellees, and declares that it ought to be accepted. It shows an appraisement of the property at $16,000 and the filing of an additional bond in the sum of only $25,000. Notice of sale seems to be provided for, and it authorizes the guardian to sell and convey the property to the appellees, without further order of court, at the expiration of ten days, unless a higher bid should be received, and, in the event of a sale to the·appellees, the guardian was directed to execute and deliver, absolutely, a deed conveying the ward's interest upon receipt of the price provided in the contract. The order is irregular and defective, to say the least, but we are not required to decide whether it would have been sufficient to have transmitted the title or not. Ordinarily, a purchaser at guardian's sale

may rely upon the regularity of proceedings authorizing the sale of the ward's real estate, and will be protected in his purchase unless such proceedings are void for want of jurisdiction. *Marquis* v. *Davis*, 113 Ind. 219; *Walker* v. *Hill*, 111 Ind. 223.

But here the purchasers had full notice of the terms of the order.

One who contracts for the purchase of real property is not bound to accept a doubtful title, or one that would likely be involved in litigation, although it might ultimately be adjudged to be good. It was said by a writer of recognized ability upon the subject that to enable one to enforce specific performance of a contract against the purchaser, the title to the estate ought to be like Cæsar's wife, entirely free from suspicion. 1 Sugden Vendors, p. 385.

This subject was quite ably considered by the court in *Smith* v. *Turner*, 50 Ind. 367, wherein it was held that any defect or irregularity in the title which would excite the suspicion of a purchaser, or which might involve the purchaser in litigation, although it might be pronounced good by competent legal advisers, was not such a title as a purchaser was compelled to accept. See, also, *Goodwine* v. *Morey*, 111 Ind. 68; *Small* v. *Reeves*, 14 Ind. 163.

We are clearly of the opinion that the order of the court granting the guardian authority to sell the real estate in controversy was so irregular and informal that it would have affected the marketability of a title builded upon it, and the appellees were not bound to accept it.

It follows that no error was committed in sustaining the demurrer to the answers.

The judgment is affirmed, with costs.

Filed May 27, 1891.