JACOBY ET UX. V. ROSEBROCK ET UX.

[No. 17,499.   Filed January 29, 1947.   Rehearing Denied March 31, 1947.   Transfer Denied May 21, 1947.]

*Pell & Pell, Sumner Terry,* and *David Smith,* all of Shelbyville, for appellants.

*Emerson J. Brunner,* of Shelbyville, for appellees.

CRUMPACKER, C. J.—On January 3, 1941, the appellants, as vendors, and the appellees, as vendees, entered into a written contract for the sale and purchase of certain farm lands in Johnson County, Indiana. The appellees made the down payment required by the terms of the contract and moved onto the land. When it came time to fully execute said contract a controversy arose between the parties concerning the condition of the appellants' title and the manner in which the appellees proposed to pay the balance of the purchase price. Negotiations broke down and the appellees moved off the land, whereupon the appellants brought this suit upon a complaint to recover damages resulting from an alleged breach of the contract by the appellees in failing to complete the purchase in accordance with the terms thereof. Issues were joined on such complaint by proper answer and, in addition thereto, the appellees filed three paragraphs of cross-complaint, only the second of which we need take note. Said second paragraph of cross-complaint alleges the written agreement to purchase the land involved for $5,900 by payment of $200 down and the balance in six months and that when the time came to complete and fully execute the contract the appellees were ready, willing and able to pay the balance of the purchase price and tendered the same to the appellees but said appellees failed and

refused to furnish a good and merchantable title to such lands. That since the making of the contract said lands have increased in value and are now worth $8,000 and by reason of the appellants' default as aforesaid the appellees have been damaged in the sum of $2,000.

All issues of fact joined on the pleadings were submitted to a jury for determination which returned a verdict against the appellants on their complaint and for the appellees on said second paragraph of cross-complaint. Damages were assessed at $400. Appellants' motion for a new trial was overruled and such ruling is the only error assigned. The motion for a new trial charges that (1) the verdict of the jury is not sustained by sufficient evidence; (2) such verdict is contrary to law; and (3) the assessment of damages is erroneous, being too large.

The undisputed evidence and that most favorable to the verdict, where the facts are in controversy, indicates that the property involved in this litigation consists of 44 acres of farm land in Johnson County which the appellants held as tenants by entireties. Forty acres of this land was acquired in 1921 and the remaining 4 acres in 1923. The conveyance in each instance warranted title and was executed to the appellants as husband and wife. The appellees, who had been displaced when the Army established what is known as the Jefferson Proving Grounds in southern Indiana, came to Shelbyville early in January, 1941, where they learned from one William Cherry, a real estate broker, that the appellants' farm was for sale. Through Cherry negotiations were opened which culminated in a written contract on January 3, 1941, whereby the appellees agreed to buy said farm for $5,900 of which $200 was paid upon the execution of said contract and the remainder to be paid on or before July 3, 1941. Upon receipt of

the whole of the purchase price the appellants agreed to deliver to the appellees a warranty deed to the land under contract together with an abstract showing a good and merchantable title in themselves. The abstract was completed sometime in February, 1941, and submitted to Emerson J. Brunner, an attorney at law, who represented the appellees in the transaction. Brunner pointed out that there was an interest in two acres of the land involved outstanding in certain of the heirs of one Abijah Dake. The appellants thereupon employed David Smith, a practicing attorney in Shelbyville, to take such steps as might be necessary to perfect their title and Smith instituted suit in the Johnson Circuit Court for that purpose. The Dake heirs hired counsel to defend such suit and obtained a continuance of the trial thereof until a time beyond the date for closing the contract. This situation was brought to the attention of the appellees and their attorney late in June or early in July, 1941, at which time Brunner stated if quit-claim deeds were procured from the Dake heirs they, the appellees, would accept the title shown by the abstract as good. Such deeds were procured but for reasons not disclosed the appellant, Clark M. Jacoby, was named therein as the sole grantee rather than both the appellants, as husband and wife. These deeds were duly recorded and abstracted. In the meantime the transcripts of two judgments were filed in the office of the clerk of the Johnson Circuit Court—one from the Bartholomew Circuit Court against both the appellants jointly in the sum of $22.10 and the other from the Shelby Circuit Court against the appellant Clark M. Jacoby alone in the sum of $122.80. These judgments were not shown in the abstract but were brought to the attention of the appellees' attorney shortly before

the parties met to close the deal. At this time future installments of state and county taxes, under moratorium, totaling $45.20, though not due, were liens on the farm and were shown in the abstract but they had not, up to then, been discussed by the parties nor had the appellees complained of them as militating against the appellants' title.

On July 16, 1941, the parties met in Brunner's office to complete the contract by payment of the balance of the purchase money and delivery of the deed. The appellants had ample funds on deposit in the Shelbyville National Bank to meet the balance due and it was their plan to write a series of checks on that bank for the payment of the moratorium taxes, the commission to Cherry for negotiating the deal, the judgments recently filed in the Johnson Circuit Court and finally to the appellants for what remained of the purchase money. This procedure seemed to be satisfactory to the appellants until a check for the payment of the Shelby Circuit Court judgment against Clark M. Jacoby was written. At this point said Jacoby protested to the effect that such judgment was not a lien on the farm; that it was for witness fees which he had paid to said witnesses directly and that he was not going to pay them twice or let the appellees pay them for him. He became angry, left the room and the meeting broke up. There was some evidence that the appellees insisted on writing a check for the payment of a lumber bill which the appellants owed but to secure which no lien had been filed nor could be filed because of the lapse of time. No such check was written however and the appellees denied their intention of doing so over the appellants' objection. We are required, under the law, to accept the appellees' version of this incident. No further con-

ferences were held by the parties and in October, 1941, the appellees moved off the farm and this suit followed.

The appellants contend that these facts show, as a matter of law, that they did not breach the contract, as found by the jury, but on the contrary it was the appellees who defaulted in the performance of their contractual obligations. This contention is based on the proposition that the appellees were obligated, under the terms of the contract, to make an unconditional tender of the balance due as a concurrent condition to the tender of good title by the appellants. That the tender actually made by the appellees was conditional in that they retained "strings" on the purchase money by indicating how it should be spent and that such a tender was insufficient to invoke their duty to deliver good title.

We think, under the facts, the jury may have concluded, with ample justification, that the appellees believed they were being offered a bad title and were unwilling to close the transaction unless sufficient of the purchase money were earmarked to discharge the liens on the property which appeared of record. The rule applicable to such a situation is clearly and aptly stated in *Newman* v. *Horner* (1914), 55 Ind. App. 298, 301, 103 N. E. 820, in the following language: "The general rule is well established that a tender to be sufficient must be unconditional, but there are instances, in the nature of exceptions to the general rule, where the rule is not strictly applicable. Where there are conditions precedent to be performd by the other party, or where there are mutual and *dependent* obligations to be performed, the tender may be conditioned on performance by the party to whom it is made, of the obligations resting upon him. A more accurate

and comprehensive statement of the general rule, perhaps, would be that the tender to be good must not be accompanied by any condition to which the party to whom it is made *has any legal right to object,* and is not invalidated by being coupled with a condition which the party making it has the right to impose and *to which the other party cannot reasonably object.*" (Our emphasis.)

This brings us to a consideration of the right of the appellees to make a tender conditioned as it was and the reasonableness of the appellants' objection thereto. We pass over the conditions requiring money to be earmarked for the payment of taxes under moratorium and the commission due Cherry. According to the appellees' version of these matters, which we are bound to accept, no objections were made to such procedure. The controversy arose when the appellees wrote a check in the sum of $122.80 for the payment of the Shelby Circuit Court judgment against Clark M. Jacoby individually. The appellants insist that they were justified in objecting to the withholding of this money because (1) the appellees, having urged specific objections to the title in February, 1941, which appellants spent time and money to obviate, waived this judgment as a defect and were precluded from raising the question at the closing time in the following July; and (2) said judgment did not render their title unmerchantable because (a) the land involved was owned by them as tenants by entireties while the judgment is against Clark M. Jacoby individually, (b) the quit-claim deeds from the Dake heirs to Clark M. Jacoby vested no title in him but were mere releases of the Dake claims, (c) that if such quit-claim deeds vested title to any part of the land in Clark M. Jacoby individually

he could not hold the same in derogation of the entireties estate of himself and wife and must be considered a trustee therefor, (d) that the land to which said judgment might possibly attach as a lien is such a small and insignificant part of the whole tract, that the rule of substantial performance eliminates such lien as a valid objection, and (e) that the record of said judgment is so indefinite and uncertain as to rob it of all requisites of a lien.  In regard to contention (1) above, we deem it sufficient to say that, under the facts of this case,. the appellees cannot be said to have waived any defect cast upon the title by the judgment under consideration because said judgment was not shown in the abstract furnished by the appellants and after it was brought to their attention they insisted on its release at their first opportunity.  Contention (2), and the various points made under it, resolves itself into the simple statement that the appellants' title was, in fact, merchantable and therefore a conditional tender of the purchase money was insufficient and did not amount to performance of the contract by the appellees. The difficulty with this position is that "One who contracts for the purchase of real estate is not bound to accept a doubtful title, or one that would likely be involved in litigation, *although it might ultimately be adjudged good.*" (Our emphasis.) *Morris, Guardian* v. *Goodwin* (1891), 1 Ind. App. 481, 489, 27 N. E. 985.

In *Smith* y. *Turner* (1875), 50 Ind. 367, 372, the Supreme Court quoted with approval the following statement from an early case: "A court of equity will not now compel a purchaser to accept a title which is so doubtful that it may expose him to litigation, though the court may believe it to be good. . . . If therefore there be a reasonable chance that some third person may raise a question against the owner of the estate,

after the completion of the contract, the court will not compel him to accept it."

So it appears that the controlling question in the present case is not whether the appellants' title was in fact merchantable, but rather was it doubtful because of the judgment under consideration? Appellants' statement of legal principles in defense of their title indicates, we think, that the question of the validity of the Shelby Circuit Court judgment as a lien on the real estate involved is one of considerable complexity concerning which the lawyers engaged in this litigation are in violent disagreement. No questions are raised on the court's instructions to the jury and we therefore assume they correctly state the law as to tender and the circumstances under which a conditional tender is justifiable. That being true, we consider the evidence sufficient to sustain a finding by the jury that the appellants' title was not free from reasonable doubt and was such as to incite the appellees' suspicion that they might be called upon to pay said judgment or defend proceedings to collect it. Under such circumstances the conditional tender here involved was one which the appellees had the right to make and one to which the appellants could not reasonably object.

The appellants next insist that the verdict of the jury is erroneous in that the damages assessed are excessive. As we have heretofore stated, such verdict was rendered on the second paragraph of the appellees' cross-complaint which counts upon a loss of profit measured by the difference between the contract price and the value of the land at the time the appellants refused to convey. We gather from the briefs of counsel that the jury was instructed that such was the measure of damages and on that theory an assessment of $400 is amply sustained by the evidence. If the measure of

damages used by the jury was improper the error lies in the instruction and not in the amount of the assessment.

We find no error and judgment is affirmed.

NOTE.—Reported in 70 N. E. (2d) 766.